**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>               Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (JKS)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST,<br><br>               Plaintiff,<br><br>          v.<br><br>JAMES E. CAMPBELL, JR., INC., d/b/a CAMPBELL FINANCIAL CORP., and JAMES E. CAMPBELL, JR.,<br><br>               Defendant. | Adversary Proceeding<br>No. 19-19-50965 (JKS) |

**DECLARATION OF NICHOLAS R. TROSZAK**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Nicholas R. Troszak, make this declaration (the "Declaration") pursuant to 28 U.S.C. § 1746 and state as follows:

1. I offer this declaration in support of *Plaintiff's Motion for Partial Summary Judgment* (the "Motion")[2] filed by Michael Goldberg, in his capacity as Liquidating Trustee of the Woodbridge Liquidation Trust ("Plaintiff" or the "Liquidating Trustee"). I have personal

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4857-6088-4210.2 94811.003

knowledge of the facts in this declaration and, if called as a witness, I could and would testify competently thereto.

2.      I am a Managing Director of Development Specialists, Inc. ("DSI"), located at 333 S. Grand Avenue, Suite 4100, Los Angeles, California 90071.  On February 13, 2018, this Court entered an order authorizing the Debtors (as defined below) to retain and employ DSI as their restructuring advisor.  Following DSI's retention as the Debtors' restructuring advisor, and until the Effective Date of the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* (the "Plan"), I supported the Chief Restructuring Officer of WGC Independent Manager LLC, a Delaware limited liability company ("WGC Independent Manager"), which was the sole manager of debtor Woodbridge Group of Companies, LLC, a Delaware limited liability company and an affiliate of each of the entities that were debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases").  Following the Effective Date of the Plan, DSI was engaged to provide forensic accounting and financial advisory services to the Woodbridge Wind-Down Entity LLC (the "Wind-Down Entity") and the Woodbridge Liquidation Trust (the "Liquidation Trust").  The post-Effective Date roles and services remain ongoing.

3.      In connection with DSI's roles as described above, I became familiar with the day-to-day operations and financial affairs of the Debtors and, following the Plan's Effective Date, the Wind-Down Entity and the Liquidation Trust.  As part of my regular duties, I have had access to and reviewed the business records of the Debtors.

4.      Among my responsibilities in this position, I am responsible for litigation support related to the investigation of brokers, investors, and the avoidance actions.  Other individuals

4857-6088-4210.2 94811.003                                 2

involved in this process act either: (a) at my direction and under my supervision; or (b) with my advice, consultation, and coordination.  I am familiar with the review and analysis of the relevant filings and books and records concerning the matters addressed herein.

5.  My statements in this Declaration are based on my personal experience and knowledge as described above, and my review of relevant documents, including, without limitation, the proofs of claim and any related books and records, or summaries of them prepared for my review in connection with the Motion.

6.  On December 4, 2017, Woodbridge Group of Companies, LLC and certain of its affiliates commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Other affiliates also filed voluntary chapter 11 cases within the following four months.

7.  The Plan confirmed in the Chapter 11 Cases was negotiated among the Debtors and key creditor constituencies and provided for the establishment of the Liquidation Trust.  Since the Effective Date, the Liquidating Trustee has carried out his duties diligently and in accordance with the terms of the Liquidation Trust and the Plan, with the goal of maximizing the value of the Liquidation Trust Assets and distributions for the benefit of the Liquidation Trust Beneficiaries, who primarily comprise victims of the Ponzi scheme perpetrated by the Debtors.  In accordance with the Plan, the Liquidation Trust has distributed proceeds to unsecured creditors, including Noteholders and Unitholders ("Investors"), who, to date, have received distributions totaling approximately 51% and 37%, respectively, of their allowed claim amounts.

8.  Based upon my review of the Debtors' books and records, Defendant James E. Campbell, Jr., worked as an outside broker recruited by the Debtor to sell FPCM's (as defined below) and received commissions.

4857-6088-4210.2 94811.003                3

9.      The brokers, including Defendant, sold Notes and Units issued by Woodbridge to investors.  The process included the brokers locating or marketing to Investors First Position Commercial Mortgages ("FPCM") as documented in "senior position packages," as they were sometimes referenced, which included primarily four (4) documents: (a) Promissory Note in favor of the lender to memorialize the loan, (b) Form of Assignment, (c) Form of Collateral Assignment, and (d) Form of Intercreditor Agreement.  Attached hereto as **Exhibit 1**, are true and correct copies of these select documents as located in the Debtors' records or produced as part of the litigation involving the Debtors.  Once the Debtors exchanged the aforementioned forms and confirmed receipt of funds from Investors, the Debtors would issue a letter or email to the broker confirming the investment and which would trigger payment of a commission to the broker.  Attached hereto as **Exhibit 2**, is a true and correct copy of a sample email memorializing an investment by a particular customer.

10.     As part of promoting the FPCMs, the brokers were issued and circulated to prospective investors a number of Woodbridge marketing items.  Attached hereto as **Exhibit 3,** is a true and correct copy of the "How It Works" brochure and email dated June 2, 2016, located within the Debtors' records and/or produced by a broker during the course of discovery.  As set forth in the brochure, the Debtors claimed that "Woodbridge funds 1-year bridge loan" to property owners.  The Debtors touted how they "thoroughly evaluate[d]", appraised each property and performed a title search (even though in reality, the underlying properties were owned by the Debtors).  Each property was represented to "hold a low loan-to-value (LTV) ration". The investments in FPCMs were represented to be "secured" loans, with the Debtors offering investors "assurance that their funds are secured by commercial real estate."  The brochure described FPCMs as a "safer alternative to help our clients reach their financial goals".

11.     Attached hereto as **Exhibit 4** is true and correct copy of Exhibit A to the Complaint setting forth pertinent details regarding commission payments paid to the Defendant.

12.     **Exhibit 4,** is a true and correct copy of a ledger that was prepared at my direction and under my supervision, as part of my duties, from the Debtors' books and records that memorializes the commissions paid to Defendant two years and four years prior to the Petition Date.  This document was attached to the Complaint filed in the adversary proceeding against Defendant.  According to the books and records of the Debtors, Defendant, James E. Campbell, Jr., was paid out of the Debtors' main operating account $146,166.47 in the two years and $254,861.97 in the four years, prior to the Petition Date.

13.     Between 2015 and the Petition Date, numerous state governments flagged Woodbridge Notes and Units as not only unregistered securities, but fraudulent.  Many of the events, such as the decrees issued by the States of Texas and Massachusetts, were picked up by news publishing companies such as Law360 as early as July 2015.  Attached hereto as **Exhibit 5** is a true and correct copy of an email and Law360 article which was located within the records of the Debtors.  This is an email for a prospective investor to Donovan Knowles. Mr. Knowles was a member of the Debtors' sales team. The email attached a July 22, 2015, Law360 article concerning Texas's emergency cease-and-desist order against the Debtors.

14.     Defendant continued to sell the FPCM after the various consent decrees issued by states and the coverage by various publication as evidenced by the Commissions ledger, included in **Exhibit 4,** which is organized by date of payment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on this 28th day of October 2024 at Camarillo, California

_____
Nicholas R. Troszak