# EXHIBIT 1

```
Property ID : Broughton - Villanova, PA
Principal   : $100,000.00
Int. Rate   : 9.00%
```

## PROMISSORY NOTE

December 30, 2014
Sherman Oaks, California

$100,000.00

FOR VALUE RECEIVED, the undersigned, **WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC**, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (hereinafter referred to as the "Borrower") does hereby promise to pay to the order of **DOUGLAS W. WISE and MARLA K. WISE**, individuals having an address of 815 Rolling Park Drive, Woodland Park, Colorado 80863 (hereinafter referred to as "Lender"), at such place as the Lender may designate by written notice to Borrower, the principal sum of One Hundred Thousand and 00/100 Dollars ($100,000.00), together with interest on all unpaid balances beginning as of the date hereof, at the fixed rate per annum as set forth in Section 1 hereof.

1.    **Interest Rate.** The unpaid balance of the principal sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) shall bear interest from the date hereof through February 1, 2016 at a fixed rate of interest equal to nine and 00/100 percent (9.00%) per annum. From February 1, 2016 through May 1, 2016, the unpaid balance of this Note shall bear interest at a fixed rate equal to nine and 00/100 percent (9.00%) per annum. The rate of interest charged hereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be charged on the principal balance from time to time outstanding on the basis of the actual number of days elapsed computed on the basis of a 360 day year.

2.    **Default Interest Rate.** During the continuance of any Event of Default (as more particularly defined in Paragraph 5 below) under this Note, or after the maturity of the loan evidenced hereby, by acceleration or otherwise, interest shall accrue from and after such event at four (4) percentage points above the interest rate then in effect hereunder (the "Default Interest Rate"). Notwithstanding anything herein to the contrary, upon and after maturity, this Note shall bear interest at a fixed rate of twenty-four and 00/100 percent (24.00%) per annum.

3.    **Repayment.** Borrower promises to pay the interest and principal on this Note, as set forth below:

Monthly payments of interest shall be made commencing on February 1, 2015 and continuing on the same day of each and every month to occur thereafter, both before and after maturity by acceleration or otherwise until May 1, 2016, when all sums outstanding hereunder shall be due and payable in full.

The entire principal balance plus accrued and unpaid interest thereon, and all other sums and charges due the Lender hereunder, unless sooner paid, shall be due and payable on May 1, 2016 (the "Maturity Date").

4.    **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

-1-



# WOODBRIDGE

MORTGAGE INVESTMENT FUND 1, LLC

January 6, 2015

Mr. Douglas W. Wise
Ms. Marla K. Wise
815 Rolling Park Dr.
Woodland Park, CO 80863

RE: Senior Interest Package – Broughton – Villanova, PA

Dear Mr. & Ms. Wise,

We wanted to welcome you as new investors with Woodbridge Mortgage Investment Fund 1, LLC and congratulate you on your new investments.

Enclosed please find a copy of the executed documents for your records.

Beginning on the first of every month, you will receive an interest check. If you purchased your senior interest in the middle of the month, you will receive a pro-rated amount for your first month.

This is an exciting business which is expanding quickly and I'm sure you'll enjoy being a part of it.

If you have any questions, please contact myself or Diana Balayan.

Very Truly Yours,

Robert Shapiro

Corporate Headquarters: 123 NW 13th Street, Suite 310, Boca Raton, FL 33432
Tel: (561) 447-0401 · Fax: (561) 447-0412
California Branch Office: 14225 Ventura Blvd. Suite 100, Sherman Oaks, CA 91423
Tel: (818) 386-6300 or (866) 865-7044 · Fax: (818) 386-6313

Property ID : Broughton - Villanova, PA
Principal  : $100,000.00
Int. Rate  : 9.00%

5.     **Cure Period and Notice of Default.** Failure of Borrower to pay by its due date any installment of the principal or of interest within thirty (30) days from the date the same becomes due and payable, shall constitute a "Payment Default" under this Note. Borrower shall have a cure period of not less than thirty (30) days after receipt of written notice ("Notice of Default") of any alleged breach or Payment Default under the terms of this Note to cure the same.

6.     **Event of Default.** Any alleged breach or Payment Default under this Note that is not fully cured following the expiration of the applicable cure period specified in a given Notice of Default shall constitute an event of default ("Event of Default") under this Note.

7.     **Waiver of Rights.**

a.     BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE OR THE COLLATERAL ASSIGNMENT DOCUMENTS (AS DEFINED BELOW) ARE A PART AND/OR THE ENFORCEMENT OF ANY OF LENDER'S RIGHTS AND REMEDIES. BORROWER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.

b.     Borrower hereby waives diligence, demand, presentment for payment, protest and notice of protest, and notice of any renewals or extensions of this Note, and agrees that the time for payment of this Note may be changed and extended at Lender's sole discretion, without impairing its liability thereon, and further consents to the release of any party liable for this obligation, or the release of all or any part of the collateral given as security for the payment of this Note, without affecting its liability with respect hereto.

8.     **Lender's Rights.** Lender's rights hereunder shall be cumulative and not exclusive and may be exercised at the sole discretion of Lender with respect to priority, order and type of collateral or security realized upon or applied toward the indebtedness evidenced hereby until this Note and all accrued and unpaid interest and other sums and charges due hereunder shall have been paid in full. Further, no failure on the part of Lender to exercise any right or remedy hereunder, whether before or after the occurrence of an Event of Default hereunder, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

9.     **Prepayment.** The Borrower shall have the right to prepay this Note in whole or in part at any time without penalty.

10.     **Binding Effect.** This Note shall bind the successors and assigns of Borrower and shall inure to the benefit of the Lender, its successors and assigns.

11.     **Captions and Section Headings.** The captions and section headings used in this Note are for convenience only and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

12.     **Severability.** In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, or in any respect, or in the

-2-

```
Property ID : Broughton - Villanova, PA
Principal   : $100,000.00
Int. Rate   : 9.00%
```

event that any one or more of the provisions of this Note shall operate or would prospectively operate, to invalidate this Note, then the remaining provisions of this Note shall remain operative and in full force and effect, shall be valid, legal and enforceable and shall in no way be affected, prejudiced or disturbed thereby.

13.     **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

14.     **No Assignment.** Neither this Note, the Loan Agreement of even date herewith between Borrower and Lender, nor all other instruments executed or to be executed in connection therewith (collectively, the "Collateral Assignment Documents") are assignable by Lender without the Borrower's written consent and any such attempted assignment without such consent shall be null and void.

15.     **Commercial Transaction.** Lender and Borrower each acknowledge and stipulate that the Loan is a commercial transaction.

16.     **Security.** This Note will be secured inter alia by the Collateral Assignment Documents upon execution thereof.

**WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC**

By: _____
David E. Golden
Its Authorized Representative

Accepted and Agreed to by Lender:

_____
DOUGLAS W. WISE

_____
MARLA K. WISE

-3-

# EXHIBIT B

# Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

## EXHIBIT B

### Form of Assignment

## ASSIGNMENT OF PROMISSORY NOTE AND MORTGAGE

THIS ASSIGNMENT OF PROMISSORY NOTE AND MORTGAGE (this "**Assignment**") made as of the ___ day of _____, 20__, by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company with an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (the "**Assignor**"), in favor of _____, having an address of _____ (the "**Assignee**").

WHEREAS, Assignee has extended a term loan (the "Loan") in the original principal amount of ___ Hundred Thousand and 00/100 Dollars ($___,000.00) to Assignor (the obligations of Assignor in respect of the Promissory Note evidencing said Loan being hereinafter referred to as the "**Obligations**"); and

WHEREAS, it is a condition of Assignee's agreement to extend such Loan that Assignor assign to Assignee its interest in certain documents hereinafter described, and the indebtedness related thereto, as security for the Obligations;

NOW, THEREFORE, as security for the Obligations, and as an inducement to Assignee to extend the Loan and in consideration therefor, and in consideration of Ten Dollars ($10.00) to Assignor paid, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby grants, bargains, sells, assigns, conveys, transfers and sets over unto Assignee a security interest in and lien upon, all of Assignor's right, title and interest in, to and under: (a) a certain Mortgage from _____, dated ____, 20__, in favor of Assignor (the "**Assigned Mortgage**"), encumbering certain real and personal property described therein, (b) a certain Promissory Note in the principal amount of ___ Hundred Thousand and 00/100 Dollars ($___,000.00), dated _____, 20__, made by _____ and payable to the order of Assignor (the "**Assigned Note**"), and all proceeds thereof and all other documents securing or guarantying the same (the Assigned Mortgage, the Assigned Note, and all other documents or instruments securing or guarantying the same being hereinafter referred to collectively as the "**Assigned Documents**").

Assignor further covenants and agrees as follows:

1. The occurrence of an "Event of Default" under the Promissory Note evidencing the Loan, or under the Collateral Assignment dated of even date herewith, beyond the applicable notice and cure period shall constitute an "**Event of Default**" under this Assignment. So long as no Event of Default shall have occurred, Assignor shall be entitled to collect all payments of interest and all scheduled payments of principal (collectively, "**Scheduled Payments**") on the Assigned Documents.

2. In the event of any payment (other than Scheduled Payments or pre-payments) under the Assigned Note, the obligor under the Assigned Documents ("**Borrower**") is hereby irrevocably authorized and directed to make such payment directly to Assignee or to such person as Assignee shall otherwise direct. Assignor shall immediately pay over to Assignee any such payment received directly from Borrower.

3. Upon written notice from Assignee that an Event of Default exists, Borrower shall thereafter make, and is hereby irrevocably authorized and directed to make, all payments under the Assigned Documents directly to Assignee or to such person as Assignee shall otherwise direct, to be applied against the Obligations until such Obligations are satisfied. Upon satisfaction of such Obligations, all remaining payments under the Assigned Documents, if any, shall resume to be made and directed to Assignor.

4. Upon the occurrence of an Event of Default, Assignor will not grant any waivers, indulgences, modifications, extensions or other departures by Borrower from or of the obligations required to be performed by Borrower under the Assigned Documents and any security or other agreement executed in connection therewith, without the prior written consent of Assignee. At Assignee's request, Assignor shall also provide to Assignee such other information regarding the Borrower or the Premises secured by the Assigned Mortgage as Assignor may have in its possession.

# Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal : $100,000.00
Int. Rate : 5.00%

5. This Assignment is executed only as security for the Obligations. The execution and delivery of this Assignment shall not subject Assignee to, or transfer or pass to Assignee, or in any way affect or modify, the liability of Assignor under any or all of the Assigned Documents.

6. In the exercise of its powers hereunder or under any documents relating to the Obligations, no liability shall be asserted or enforced against Assignee, all such liability being hereby expressly waived and released by Assignor. Assignor hereby agrees to indemnify Assignee, and hold it harmless, from any and all liabilities, losses, or damages which Assignee shall incur by reason of this Assignment or the Assigned Documents and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or, undertakings required to be performed by Assignor in connection with the Assigned Documents.

7. Assignor hereby agrees and acknowledges that neither the acceptance of this Assignment by Assignee nor the exercise of, or failure to exercise, any right, power or remedy in this instrument conferred upon Assignee shall be deemed or construed to obligate Assignee, or its successors or assigns, to pay any sum of money, take any action or incur any liability in connection with any of the Assigned Documents. It is further agreed and understood by Assignor that neither Assignee nor its successors or assigns shall be liable in any way for any costs, expenses or liabilities connected with, or any charges or liabilities resulting from, any of the Assigned Documents.

8. This Assignment shall be binding upon Assignor and its successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. Notwithstanding anything contained herein, however, neither the Note nor the other Loan Documents are assignable by Assignee without the Assignor's written consent, and any such attempted assignment without such consent shall be null and void. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

9. (a) Any notice, report, demand, request or other instrument or communication authorized or required under this Assignment to be given to Assignor, Assignee or Borrower shall be deemed given if addressed to the party intended to receive the same, at the address of such party set forth below, (i) when delivered at such address by hand or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same is actually received by such party:

Assignor:  Woodbridge Mortgage Investment Fund 3, LLC
14225 Ventura Boulevard
Suite 100
Sherman Oaks, California 91423

Assignee:  _____
_____
_____

(b) Any party may change the address to which any such notice, report, demand, request or other instrument or communication to such party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties.

10. Upon full payment and performance of the Obligations, this Assignment shall terminate and shall be of no further force and effect. Upon such termination, Assignee shall indorse the Assigned Note to the order of Assignor (or otherwise as Assignor may direct), without recourse, warranty or representation, and Assignee shall deliver the Assigned Note to Assignor.

11. Notwithstanding anything to the contrary set forth in this Assignment, unless and until Assignee shall have exercised its rights under paragraph 3 above, Assignor shall be entitled to foreclose the Assigned Mortgage. The proceeds of such foreclosure shall be applied to payment of the Obligations before being used for any other purpose.

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate  : 5.00%

IN WITNESS WHEREOF, the Assignor has executed this Assignment as of the date first written above.

Assignor:

**WOODBRIDGE MORTGAGE**
**INVESTMENT FUND 3, LLC**

_____

By: _____

Its Authorized Representative

_____

# EXHIBIT C

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal : $100,000.00
Int. Rate : 5.00%

### EXHIBIT C

### Form of Collateral Assignment

## COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS

THIS COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS (this "Assignment"), dated as of this ____ day of _____ 20__, is made and given by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company ("Borrower"), having an address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423, and in favor of _____, having an address of _____, his or her successors and assigns ("Lender").

### Background:

Lender has agreed to make, and Borrower has agreed to accept, a loan in the original maximum principal amount of ____ Hundred Thousand and 00/100 Dollars ($____,000.00) (the "Loan") upon the terms and conditions set forth in that certain Promissory Note, dated _____, in the original principal amount of ____ Hundred Thousand and 00/100 Dollars ($____,000.00) made by Borrower and payable to Lender (as the same may be amended or modified from time to time, the "Note").

Lender understands that Borrower shall utilize the proceeds of the Loan to fund a loan to a third party borrower, such loan to be made pursuant to the "Underlying Documents" more particularly described in Section 2.1.1 below. As a condition to making the Loan, Lender has required Borrower to assign to Lender, as additional security for the Loan, all of Borrower's right, title and interest in and to the promissory notes, security instruments and other loan documents conveyed including without limiting the generality of the foregoing, all rights to receive payments under such collateral.

### Statement of Agreement

NOW, THEREFORE, for valuable consideration, separate and distinct from the consideration given by Lender with respect to the Loan, the receipt and adequacy of which are hereby acknowledged, Borrower agrees as follows:

1. **Recitals.** The Recitals are incorporated herein by this reference.

2. **Assignment.** As security for the performance of all obligations of Borrower to Lender under the Note, the Assignment of Promissory Note and Mortgage, and all other documents now or hereafter evidencing, securing or related to the Loan (collectively, the "Loan Documents"), Borrower hereby assigns and transfers to Lender, on a non-exclusive basis, all of its right, title and interest in and to the following collateral (the "Collateral"):

2.1.1. All right, title, interest, claims or rights of Borrower now or hereafter in and to the notes, deeds to secure debt, security instruments, guaranties and other loan documents (collectively, the "Underlying Documents") described on **Exhibit "A"** attached hereto and incorporated herein by this reference; and

2.1.2. Any and all proceeds of a casualty or condemnation, repayment of loans, proceeds of foreclosure sales, and payments of any kind or nature whatsoever, now or hereafter distributable or payable to Borrower by reason of Borrower's ownership of the Underlying Documents; and

2.1.3. All accounts, contract rights, security entitlements, investment property and general intangibles now or hereafter evidencing, arising from or relating to any of the foregoing; and

2.1.4. All right of Borrower to collect and enforce payments pursuant to the terms of the Underlying Documents; and

2.1.5. All documents, writings, leases, books, files, records, computer tapes, programs, ledger books and ledger pages arising from or used in connection with any of the foregoing; and

2.1.6. All renewals, extensions, additions, substitutions or replacements of any of the foregoing; and

82 | P a g e

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal : $100,000.00
Int. Rate : 5.00%

2.1.7. All powers, options, rights, privileges and immunities pertaining to any of the foregoing; and

2.1.8. All proceeds of any of the foregoing and all cash, security or other property distributed on account of any of the foregoing.

3. **Representations and Warranties.** Borrower hereby represents and warrants that: (a) Borrower is or will be the true owner of the interests under the Underlying Documents; (b) Borrower has not assigned or granted a security interest in the Collateral to any person or entity that is or will be superior to that of the Lender; and (c) to Borrower's knowledge, (i) Borrower's interest in the Collateral is not and will not be subject to any claims, setoffs, encumbrances or deductions, and (ii) the Loan Documents constitute and will constitute valid and binding obligations of Borrower.

4. **No Assumption by Lender and Covenants of Borrower.** Neither this Assignment nor any action or actions on the part of Lender after the date hereof shall constitute an assumption by Lender of any obligations under the Underlying Documents, and Borrower shall continue to be liable for all obligations thereunder arising after the date hereof. Borrower agrees to perform punctually any and all obligations it may have under the Underlying Documents, to take such steps as it may deem necessary or appropriate to secure performance by the obligor(s) and guarantor(s) of the Underlying Documents thereon of all of its obligations under the applicable Underlying Documents.

5. **Benefits Conditionally Retained by Borrower.** Lender hereby grants Borrower the right to continue to receive the benefits of, and exercise the rights under, the Underlying Documents unless an Event of Default (as described in Section 14 below) exists, in which event such rights may be revoked at any time thereafter at the option of Lender.

6. **Action by Lender Following Event of Default.** Lender shall have the right, but not an obligation, at any time while an Event of Default exists, without notice and without taking possession of the Property or any part thereof, to take in Lender's name or in the name of Borrower such action as Lender may, at any time or from time to time, reasonably determine to be necessary to cure any default under the Underlying Documents or to protect or exercise the rights of Borrower or Lender thereunder, and may otherwise exercise any other rights or remedies Lender has under the Loan Documents. Lender shall incur no liability if any action taken by it or on its behalf pursuant to this Assignment shall prove to be in whole or in part inadequate or invalid; and Borrower hereby agrees to indemnify, defend, and hold Lender free and harmless from and against any loss, costs, liability or reasonable expense (including, without limitation, reasonable attorneys' and accountants' fees and expenses, court costs and investigation expenses) actually incurred by Lender in connection with its actions under this Section 6.

7. **Power of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender as its true and lawful agent and attorney-in-fact, with full power of substitution, to demand, receive and enforce all rights of Borrower under the Underlying Documents, following the occurrence and during the continuance of an Event of Default, to modify, supplement and terminate the Underlying Documents, to transfer the Underlying Documents to Lender, to give appropriate releases, receipts for or on behalf of Borrower in connection with the Underlying Documents, to file, pursue, receive payment and acquittances for or otherwise compromise each and every claim Borrower has or may have against the obligor(s) and guarantor(s) of the Underlying Documents for payment or otherwise under the Underlying Documents, all in the name, place and stead of Borrower or in Lender's name, with the same force and effect as Borrower could have if this Assignment had not been made. Borrower authorizes any third party to rely exclusively on the certificate of an officer of Lender or its successor for the establishment of an Event of Default and hereby waives and releases any claim Borrower may have against such third party for such reliance. Borrower hereby agrees to deliver to Lender, upon Lender's written demand and after the occurrence and during the continuance of an Event of Default, all instruments and documents as Lender may reasonably require in order to permit Lender's succession to the right, title and interest of Borrower in and to the Underlying Documents as provided herein. Borrower appoints Lender as its attorney-in-fact to execute any and all such documents on Borrower's behalf upon any failure of Borrower to so execute such documents, it is hereby recognized that the power of attorney herein granted is coupled with an interest and is irrevocable.

# Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

At Lender's option, Lender may record this Assignment in the recording office. By acceptance of this Assignment, Lender agrees that it shall not exercise the power of attorney granted herein unless there shall have occurred and be continuing an Event of Default.

8. **Binding Effect.** This Assignment shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns, including without limitation any purchaser upon foreclosure of the lien and security interests created by the Underlying Documents or under a deed in lieu of such foreclosure and any receiver in possession of the Property.

9. **No Release or Termination.** The taking of this Assignment by Lender shall not affect the release of any other collateral now or hereafter held by Lender as security for the obligations of Borrower under the Loan Documents, nor shall the taking of additional security for any such obligations hereafter effect a release or termination of this Assignment, or any terms or provisions hereof.

10. **No Waiver.** No failure or delay on the part of Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies hereunder are cumulative and may be exercised by Lender either independently of or concurrently with any other right, remedy or power contained herein or in any instrument executed in connection with the Loan Documents.

11. **Captions.** The section titles or captions contained in this Assignment are for convenience only and shall not be deemed to define, limit or otherwise modify the scope or intent of this Assignment.

12. **Variation in Pronouns.** All the terms and words used in this Assignment, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Assignment or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

13. **Notices.** Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be given in the manner required by the Loan Documents.

14. **Event of Default.** The occurrence of an Event of Default under the Note or any of the other Loan Documents beyond the applicable notice and cure period shall constitute an "Event of Default" under this Assignment.

15. **Successors and Assigns.** This Assignment shall be binding upon Borrower and its successors and assigns and shall insure to the benefit of the Lender and Lender's successors; provided, however, and notwithstanding anything contained herein, neither the Note nor the Loan Documents are assignable by Lender, in whole or in part, and any such attempted assignment shall be null and void.

16. **Governing Law.** The parties hereby acknowledge, consent and agree this Assignment and the rights of all parties mentioned herein shall be governed by the laws of the State of Delaware.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK – SIGNATURE PAGE FOLLOWS]*

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

**IN WITNESS WHEREOF**, the Borrower, acting by its duly authorized officer, has signed, sealed and delivered this Assignment on the date above written.

BORROWER:

WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC

By:_____

_____
Its Authorized Representative

STATE OF CONNECTICUT    )
                        )    ss.
COUNTY OF TOLLAND       )

On this ___ of _____, 20__, before me, the undersigned notary public, personally appeared _____, Authorized Representative of Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company, to me known and known by me to be the party executing the foregoing <u>Collateral Assignment of Note, Mortgage and Other Loan Documents</u> instrument on behalf of said limited liability company, in favor of _____, and acknowledged said instrument and the execution thereof, to be his free act and deed as such officer and the free act and deed of said limited liability company.

Notary Public _____
Printed Name:_____
My commission expires _____
(Notary Seal)

### EXHIBIT A TO COLLATERAL ASSIGNMENT

1. That certain Mortgage from _____, dated _____, in favor of Woodbridge Mortgage Investment Fund 3, LLC, encumbering certain real and personal property described therein.

2. That certain Promissory Note in the original principal amount of _____ Hundred Thousand and 00/100 Dollars ($___,000.00), dated _____, 20__, made by _____ and payable to the order of Woodbridge Mortgage Investment Fund 3, LLC.

# EXHIBIT D

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

EXHIBIT D

### Form of Intercreditor Agreement

### INTERCREDITOR AGREEMENT (PARI PASSU)

THIS INTERCREDITOR AGREEMENT ("Agreement") is entered into by and between _____, having an address at _____ ("First Party") and _____, having an address at _____ ("Second Party") (First Party and Second Party are sometimes herein referred to collectively as the "Lenders" and individually as a "Lender"), as of the date written below.

### W I T N E S S E T H

WHEREAS, the Lenders have agreed collectively to lend $_____ to Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company ("Woodbridge"), and

WHEREAS, in return for the loans by the Lenders, Woodbridge will execute and deliver to each of them promissory notes each in the original principal amount of $_____ (the "Notes"), and

WHEREAS, Woodbridge intends to use the funds (the "Loans") provided by Lenders to finance a mortgage loan in the principal amount of $_____ to _____, to be evidenced by a promissory note and secured by a mortgage on property located at _____ (the "Underlying Note" and the "Mortgage" respectively), and

WHEREAS, upon closing of the Loans, Woodbridge will deliver to each of the Lenders a collateral assignment of the Underlying Note and Mortgage as security for the Notes (the "Collateral Assignments"); and

WHEREAS, the Lenders wish that each of them shall be treated equally with reference to the payment under the respective Notes and/or enforcement of the Collateral Assignments; and

WHEREAS, this Agreement shall be effective and bind the parties hereto.

NOW THEREFORE, the parties hereto agree as follows:

1. The above recitals are hereby made a part of this Agreement.

2. Unless explicitly agreed to the contrary in writing, the Lenders shall have equal rights of enforcement, priorities, duties, and obligations under the Notes, and the Collateral Assignments and any other documentation executed and delivered in connection therewith (the "Loan Documents").

3. In the event of a default under any of the Notes, the Collateral Assignments or other Loan Documents, all of the Notes shall be in default, and shall be due and payable at the option of the Lenders acting in concert.

4. If any of the Lender(s) desire to exercise any rights it may have under the Loan Documents, it shall notify the other Lender(s) as soon as practicable.

5. All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by fax (with written confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested, or (c) when received by the addressee, if sent by nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and fax numbers as set forth below (or to such other addresses and fax numbers as a party may designate by notice to the other parties):

LENDERS:

First Party

and

Second Party

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal : $100,000.00
Int. Rate : 5.00%

6. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of Delaware, or, if it has or can acquire jurisdiction, in the United States District Court for the District of Delaware, and each of the parties consents to the jurisdiction of such courts (and of the appropriate Appellate Courts) in any such action or proceeding and waives any objection to venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

7. This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the Agreement between the parties with respect to its subject matter. This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

8. If any provision of this Agreement is held invalid or unenforceable by any court or competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

9. This Agreement will be governed by the laws of the State of Delaware without regard to conflicts of interest principles.

10. This Agreement may be executed in any number of counterparts, each of which taken together shall constitute a single agreement.

     **IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement as of the _____ day of _____, 20__.

LENDER(S):

_____
FIRST PARTY

_____
SECOND PARTY

Acknowledged and Agreed to by:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

By: _____
    Its Authorized Representative