# EXHIBIT E

ORIGINAL



0000173777

# NEW APPLICATION

### BEFORE THE ARIZONA CORPORATION COMMISSION

<u>COMMISSIONERS</u>

DOUG LITTLE - Chairman
BOB STUMP
BOB BURNS
TOM FORESE
ANDY TOBIN

| | |
|---|---|
| In the matter of: | DOCKET NO. S-20988A-16-0354 |
| WMF Management, LLC, a Delaware limited liability company, | **TEMPORARY ORDER TO CEASE AND DESIST AND NOTICE OF OPPORTUNITY FOR HEARING** |
| Woodbridge Group of Companies, LLC, a Delaware limited liability company, | |
| Woodbridge Mortgage Investment Fund 1, LLC, a Delaware limited liability company, | Arizona Corporation Commission **DOCKETED** |
| Woodbridge Mortgage Investment Fund 2, LLC, a Delaware limited liability company, | OCT 04 2016 |
| Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company, | DOCKETED BY |
| Woodbridge Mortgage Investment Fund 3A, LLC, a Delaware limited liability company, | |
| Robert H. Shapiro, an unmarried man, | |
| Robert W. Carfagno, Senior. (CRD no. 2387162), and Debra L. Carfagno, husband and wife, | |
| AIO Financial LLC, an Arizona limited liability company, | |
| William M. Holliday (CRD no. 4930333), and Guadalupe A. Holliday, husband and wife, | |
| Respondents. | |

RECEIVED
AZ CORP COMMISSION
DOCKET CONTROL
2016 OCT -4 P 2: 58

Docket No. S-20988A-16-0354

NOTICE:  THIS ORDER IS EFFECTIVE IMMEDIATELY

EACH RESPONDENT HAS 20 DAYS TO REQUEST A HEARING

EACH RESPONDENT HAS 30 DAYS TO FILE AN ANSWER

The Securities Division ("Division") of the Arizona Corporation Commission ("Commission") alleges that respondents Woodbridge Group of Companies, LLC, Woodbridge Mortgage Investment Fund 1, LLC, Woodbridge Mortgage Investment Fund 2, LLC, Woodbridge Mortgage Investment Fund 3, LLC, and Woodbridge Mortgage Investment Fund 3A, LLC are engaging in or are about to engage in acts and practices that constitute violations of A.R.S. § 44-1801, et seq., the Arizona Securities Act ("Securities Act"), and that the public welfare requires immediate action.

The Division further alleges that respondents Robert W. Carfagno, Senior, AIO Financial, and William H. Holliday have engaged in acts and practices that constitute violations of A.R.S. § 44-1801, et seq., the Arizona Securities Act ("Securities Act") and/or A.R.S. § 44-3101, et seq., the Investment Management Act ("IM Act")

The Division further alleges that Robert H. Shapiro and WMF Management, LLC directly or indirectly control Woodbridge Mortgage Investment Fund 1, LLC, Woodbridge Mortgage Investment Fund 2, LLC Woodbridge Mortgage Investment Fund 3, LLC, and Woodbridge Mortgage Investment Fund 3A, LLC within the meaning of A.R.S. § 44-1999, so that they are jointly and severally liable under A.R.S. § 44-1999 to the same extent as Woodbridge Mortgage Investment Fund 1, LLC, Woodbridge Mortgage Investment Fund 2, LLC, and Woodbridge Mortgage Investment Fund 3, LLC for their violations of A.R.S. § 44-1991.

## I.

## JURISDICTION

1. The Commission has jurisdiction over this matter pursuant to Article XV of the Arizona Constitution, the Securities Act, and the IM Act.

2

Docket No. S-20988A-16-0354

## II.

## RESPONDENTS

2.      WMF Management, LLC ("WMF Management") is a limited liability company organized under the laws of the state of Delaware in June 2012.

3.      Woodbridge Group of Companies, LLC ("Woodbridge Group") is a limited liability company organized under the laws of the state of Delaware in December 2014.

4.      Woodbridge Mortgage Investment Fund 1, LLC ("Woodbridge Fund 1") is a limited liability company organized under the laws of the state of Delaware in June 2012.

5.      Woodbridge Mortgage Investment Fund 2, LLC ("Woodbridge Fund 2") is a limited liability company organized under the laws of the state of Delaware in December 2013.

6.      Woodbridge Mortgage Investment Fund 3, LLC ("Woodbridge Fund 3") is a limited liability company organized under the laws of the state of Delaware in September 2014.

7.      Woodbridge Mortgage Investment Fund 3A, LLC ("Woodbridge Fund 3A") is a limited liability company organized under the laws of the state of Delaware in July 2015.

8.      Woodbridge Fund 1, Woodbridge Fund 2, Woodbridge Fund 3, and Woodbridge Fund 3A may be referred to collectively as "the Woodbridge Funds". WMF Management, Woodbridge Group, and the Woodbridge Funds may be referred to collectively as "the Woodbridge Companies."

9.      The Woodbridge Companies have offices in California and Connecticut.

10.     Since at least October 22, 2015, Robert H. Shapiro ("Shapiro") has been an unmarried man and a resident of the state of California and/or Florida.  Since at least October 22, 2015, Shapiro has been the managing member of WMF Management and WMF Management has been the managing member of each of the Woodbridge Funds.

11.     Since at least October 22, 2015, Robert W. Carfagno, Senior ("Carfagno") has been a married man and a resident of the state of Arizona. Carfagno has not been registered by the Commission as a securities salesman or dealer since June 16, 2005.

3

12.     AIO Financial, LLC ("AIO Financial") is a limited liability company organized under the laws of the state of Arizona in December 2004. AIO Financial's office is in Tucson, Arizona. Since October 22, 2015, AIO Financial has been licensed by the Commission as an investment advisor with CRD no. 114030. AIO Financial, LLC has not been registered by the Commission as a securities salesman or dealer.

13.     Since at least October 22, 2015, William M. Holliday ("Holliday") has been a married man and a resident of the state of Arizona. Since at least October 22, 2015, Holliday has been licensed by the Commission as an investment advisor representative with CRD no. 4930333 and licensed with AIO Financial. AIO Financial is member-managed, and Holliday is one of its two members. Holliday has not been registered by the Commission as a securities salesman or dealer.

14.     Since at least October 22, 2015, Debra L. Carfagno has been the spouse of Robert W. Carfagno, Senior and Guadalupe A. Holliday has been the spouse of William M. Holliday. (Debra L. Carfagno and Guadalupe A. Holliday may be referred to collectively as "Respondent Spouses") Respondent Spouses are joined in this action under A.R.S. § 44-2031(C) and A.R.S. § 44-3291(C) solely for purposes of determining the liability of the marital communities.

15.     Since at least October 22, 2015, Carfagno and Holliday have been acting for their own benefit and for the benefit or in furtherance of the marital communities.

16.     The Woodbridge Companies, Shapiro, Carfagno, AIO Financial, and Holliday may be referred to collectively as "Respondents."

### III.

### FACTS

17.     The Woodbridge Funds are commercial lenders that make hard-money loans secured by commercial property. The Woodbridge Funds raise money from investors to help fund the hard-money loans. The Woodbridge Companies refer to these investments as First Position Commercial Mortgages ("FPCM"). The Woodbridge Funds advertise that their management teams' substantial

4

experience lets them maintain a successful lending model and find lending opportunities that are favorable for investors. Investors do not have any role other than providing money.

18.   An FPCM consists of a promissory note from a Woodbridge Fund, a loan agreement, and a non-exclusive assignment of the Woodbridge Fund's security interest in the mortgage for the underlying hard-money loan. The Woodbridge Funds pool money from multiple investors for each hard-money loan. The Woodbridge Funds' promissory notes effectively guarantee the underlying hard-money loans, and the Woodbridge Funds' advertising materials state that the Woodbridge Funds are obligated to make payments to FPCM investors even if the hard-money borrower defaults.

19.   The FPCMs are securities in the form of notes, investment contracts, and real property investment contracts.

20.   FPCMs involve risks that are typically associated with real estate investments. An investor might need to sue the Woodbridge Fund or the third party hard-money borrower to recover the investment. The value of the real estate collateral for the hard-money loan might be too low due to depreciation or the Woodbridge Funds' failure to properly value it. If the real estate does not adequately collateralize the loan, the Woodbridge Funds may fail to maintain enough liquid cash reserve to continue making payments to the investor. And the investor's security interest in the real estate collateral could be invalidated by the Woodbridge Funds' failure to properly perfect the security interest (collectively "Risks").

21.   On May 4, 2015, Woodbridge Fund 1, Woodbridge Fund 2, and Woodbridge Fund 3 consented to an order by the Massachusetts Securities Division ("Massachusetts Consent"). The Massachusetts Consent found that the FPCMs are securities and that Woodbridge Fund 1, Woodbridge Fund 2, and Woodbridge Fund 3 had violated the Massachusetts Uniform Securities Act by selling unregistered securities. The Massachusetts Consent also required them to offer rescission to Massachusetts investors and to pay a civil penalty of $250,000.

22.   On July 17, 2015, the Texas State Securities Board issued an emergency cease and desist order ("Texas Order") against Woodbridge Fund 3, Shapiro, and other parties that ordered

5

them to stop engaging in fraud in connection with the sale of securities in Texas. The Texas Order alleged that the FPCMs are securities and alleged that Woodbridge Fund 3 and Shapiro were engaging in fraud in connection with the sale of securities by failing to disclose the Massachusetts Consent and various investment risks to potential investors.

23. On March 18, 2016, Woodbridge Fund 3 and Shapiro consented to an order by the Texas State Securities Board ("Texas Consent"). The Texas Consent found that Shapiro was the controlling person of Woodbridge Fund 3, concluded that the FPCMs were securities, and concluded that Woodbridge Fund 3 and Shapiro violated the Texas Securities Act by offering unregistered securities. Shapiro consented to the order on behalf of Woodbridge Fund 3 as its controlling person.

24. The Woodbridge Companies sell the FPCMs through unregistered salesmen located in Arizona.

25. At least three investors have invested a total of at least $100,000 in FPCMs through AIO Financial and Holliday.

26. Arizona resident J.J. invested $25,000 in an FPCM from Woodbridge Fund 1 on approximately October 22, 2015.

27. Arizona resident J.R. invested $25,000 in an FPCM from Woodbridge Fund 2 on approximately October 30, 2015.

28. Former Arizona resident R.M. invested $50,000 in an FPCM from Woodbridge Fund 3 on approximately January 26, 2016.

29. J.J., J.R., and R.M. are investment advisory clients of AIO Financial and Holliday. For each of these investors, AIO Financial and Holliday recommended that they invest in the FPCMs during portfolio reviews conducted in AIO Financial's Tucson, Arizona office.

30. Before they invested, J.J., J.R., and R.M. were not informed of the Massachusetts Consent or the Texas Order. Nor were they informed of the Risks of the FPCM investments.

31. At least two investors have invested a total of at least $150,000 in an FPCM through Carfagno.

6

Docket No. S-20988A-16-0354

32.    Arizona residents G.S. and S.S. invested $150,000 in an FPCM from Woodbridge Fund 3A on approximately March 31, 2016. Carfagno was their intermediary with the Woodbridge Companies. Woodbridge Group paid Carfagno a $3,000 commission for G.S. and S.S.'s investment.

33.    Before G.S. and S.S. invested, Carfagno and Woodbridge Group mispresented to them that, "Woodbridge and its predecessors have never been found to have violated any securities law." In fact, the Massachusetts Consent found that three of the Woodbridge Funds had violated the Massachusetts Uniform Securities Act. Carfagno and Woodbridge Group also told G.S. and S.S. that the Texas Order addressed concerns similar to the Massachusetts Consent. However, Carfagno and Woodbridge Group omitted that the Texas Order also addressed alleged securities fraud by Woodbridge Fund 3, whereas the Massachusetts Consent only address securities registration violations.

34.    On or around April 15, 2016, Arizona resident A.A. received a call from Carfagno, who had previously sold her some annuities. Carfagno offered A.A. a $25,000 investment in an FPCM that would pay 6% interest and would be repaid at the end of the year. A.A. asked Carfagno if he fully understood the investment, and he said that he did not.

35.    A.A. and Carfagno together called David E. Golden ("Golden"), who was then a Vice President and General Counsel at Woodbridge Group. Golden told A.A. that the Woodbridge Companies loan money to developers for properties and that the loans are repaid when the properties are sold. A.A. asked Golden if the investment had any risks, and Golden told her that the only risk was that she would lose her money if the real estate market crashed by 40% and that this has never happened before.

36.    A.A. was not told about the Risks of the FPCMs or about the Massachusetts Consent, the Texas Order, or the Texas Consent.

37.    Woodbridge Fund 3A proposed that A.A. invest in an FPCM for a mortgage on a property in California, the same mortgage in which G.S. and S.S. had already invested with their FPCM. A.A. ultimately decided not to invest.

7

38. The five investors above invested a total of at least $250,000 in FPCMs. The Woodbridge Companies have paid back approximately $12,375 to these investors.

39. Woodbridge Group controls a website at www.woodbridgewealth.com ("Woodbridge Website") that advertises the FPCMs and other investment products to the public. The Woodbridge Website invites potential investors to submit their name, phone number, and email address to request more information.

40. On July 27, 2016, an Arizona resident visited the Woodbridge Website and submitted a request for more information. The potential investor received an email the same day from the "Woodbridge Investments Team." The email included a link to download a twenty one page document titled "The 2016 Guide to Financial Alternatives" ("Guide").

41. Ten pages of the Guide are dedicated to describing the FPCMs. The document describes the FPCMs as "simple, safer and secured." The Guide includes a message from the "Managing Director of Investments." He states that the FPCMs "can help you get ahead safely and profitably," and he states that "Our honesty and transparency have always set us apart ...." The Guide does not mention the Massachusetts Consent, Texas Order, or Texas Consent. Nor does it describe the Risks of the FPCMs.

42. Woodbridge Group continues to advertise the FPCMs and other investment products to potential Arizona investors on the Woodbridge Website.

IV.

**VIOLATION OF A.R.S. § 44-1841**

**(Offer and Sale of Unregistered Securities)**

43. From on or about October 22, 2015, Respondents Woodbridge Fund 1, Woodbridge Group, AIO Financial, and Holliday offered or sold securities in the form of notes, investment contracts, and real property investment contracts within or from Arizona.

8

Docket No. S-20988A-16-0354

44. From on or about October 30, 2015, Respondent Woodbridge Fund 2 offered or sold securities in the form of notes, investment contracts, and real property investment contracts within or from Arizona.

45. From on or about January 26, 2016, Respondent Woodbridge Fund 3 offered or sold securities in the form of notes, investment contracts, and real property investment contracts within or from Arizona.

46. From on or about March 31, 2016, Respondents Woodbridge Fund 3A and Carfagno offered or sold securities in the form of notes, investment contracts, and real property investment contracts within or from Arizona.

47. The securities referred to above are not registered pursuant to Articles 6 or 7 of the Securities Act.

48. This conduct violates A.R.S. § 44-1841.

V.

**VIOLATION OF A.R.S. § 44-1842**

**(Transactions by Unregistered Dealers or Salesmen)**

49. Respondents the Woodbridge Companies, Carfagno, AIO Financial, and Holliday offered or sold securities within or from Arizona while not registered as dealers or salesmen pursuant to Article 9 of the Securities Act.

50. This conduct violates A.R.S. § 44-1842.

VI.

**VIOLATION OF A.R.S. § 44-1991**

**(Fraud in Connection with the Offer or Sale of Securities)**

51. In connection with the offer or sale of securities within or from Arizona, Respondents the Woodbridge Fund 1, Woodbridge Fund 2, Woodbridge Fund 3, Woodbridge Group, Carfagno, AIO Financial, and Holliday directly or indirectly: (i) employed a device, scheme, or artifice to defraud; (ii) made untrue statements of material fact or omitted to state material facts that were

9

necessary in order to make the statements made not misleading in light of the circumstances under which they were made; or (iii) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon offerees and investors. Their conduct includes, but is not limited to, the following

      a)    Woodbridge Fund 1, AIO Financial, and Holliday failed to disclose the Massachusetts Consent, the Texas Order, and the Risks of the FPCMs to J.J.;

      b)    Woodbridge Fund 2, AIO Financial, and Holliday failed to disclose the Massachusetts Consent, the Texas Order, and the Risks of the FPCMs to J.J.;

      c)    Woodbridge Fund 3, AIO Financial, and Holliday failed to disclose the Massachusetts Consent, Texas Order, and the Risks of the FPCMs to R.M.;

      d)    Carfagno and Woodbridge Group misrepresented to G.S. and S.S. that the Woodbridge Companies had never been found to have violated any securities laws;

      e)    Carfagno and Woodbridge Group failed to disclose to G.S. and the S.S. that the Texas Order alleged securities fraud by Woodbridge Fund 3; and

      f)    Carfagno and Woodbridge Group failed to disclose the Massachusetts Consent, the Texas Order, the Texas Consent, and the Risks of the FPCMs to A.A.

52.    This conduct violates A.R.S. § 44-1991.

## VII.

## CONTROL PERSON LIABILITY PURSUANT TO A.R.S. § 44-1999

53.    Shapiro and WMF Management directly or indirectly control Woodbridge Fund 1, Woodbridge Fund 2, Woodbridge Fund 3, and Woodbridge Fund 3A within the meaning of A.R.S. § 44-1999, so that they are jointly and severally liable under A.R.S. § 44-1999 to the same extent as Woodbridge Fund 1, Woodbridge Fund 2, Woodbridge Fund 3, and Woodbridge Fund 3A for their violations of A.R.S. § 44-1991.

10

## VIII.

## REMEDIES PURSUANT TO A.R.S. § 44-3201

### (Denial, Revocation, or Suspension of Investment Adviser or Investment Adviser Representative License; Restitution, Penalties, or other Affirmative Action)

54. Respondents AIO Financial and Holliday's conduct is grounds to revoke or suspend AIO Financial's license as an investment adviser and Holliday's license as an investment adviser representative with the Commission pursuant to A.R.S. § 44-3201. Specifically, revocation or suspension of their licenses would be in the public interest, and they have violated A.R.S. § 44-3241 by fraud in connection with a transaction involving the provision of investment advisory services, within the meaning of A.R.S. § 44-3201(A)(3).

55. Respondents AIO Financial and Holliday's conduct is grounds to assess restitution, penalties, and/or take appropriate affirmative action pursuant to A.R.S. § 44-3201. Specifically, Respondents have: engaged in dishonest or unethical practices in the securities industry, within the meaning of A.R.S. § 44-3201(A)(13).

## IX.

## VIOLATION OF A.R.S. § 44-3241

### (Fraud in the provision of investment advisory services)

56. Respondents AIO Financial and Holliday engaged in transactions within or from Arizona involving the provision of investment advisory services in which they, directly or indirectly: (i) employed a device, scheme, or artifice to defraud; (ii) made untrue statements of material fact or omitted to state material facts that were necessary in order to make the statements made not misleading in light of the circumstances under which they were made; (iii) misrepresented professional qualifications with the intent that the client rely on the misrepresentation; or (iv) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit. Their conduct includes, but is not limited to, the following:

11

b)    AIO Financial and Holliday failed to disclose the Massachusetts Consent and the Texas Order to clients J.J., J.R., and R.M.; and

c)    AIO Financial and Holliday failed to disclose the Risks of the FPCMs to clients J.J., J.R., and R.M.

57.    This conduct violates A.R.S. § 44-3241.

### X.

### TEMPORARY ORDER

### Cease and Desist from Violating the Securities Act

THEREFORE, based on the above allegations, and because the Commission has determined that the public welfare requires immediate action,

IT IS ORDERED, pursuant to A.R.S. § 44-1972(C) and A.A.C. R14-4-307, that Respondents WMF Management, Woodbridge Group, Woodbridge Fund 1, Woodbridge Fund 2, Woodbridge Fund 3, Woodbridge Fund 3A, Shapiro, their agents, servants, employees, successors, assigns, and those persons in active concert or participation with them CEASE AND DESIST from any violations of the Securities Act.

IT IS FURTHER ORDERED that this Temporary Order to Cease and Desist shall remain in effect for 180 days unless sooner vacated, modified, or made permanent by the Commission.

IT IS FURTHER ORDERED that if a request for hearing is made, this Temporary Order shall remain effective from the date a hearing is requested until a decision is entered unless otherwise ordered by the Commission.

IT IS FURTHER ORDERED that this Order shall be effective immediately.

### XI.

### REQUESTED RELIEF

The Division requests that the Commission grant the following relief:

1.    Order Respondents to permanently cease and desist from violating the Securities Act and/or the IM Act, pursuant to A.R.S. §§ 44-2032, 44-3201, and 44-3292;

12

2.      Order Respondents to take affirmative action to correct the conditions resulting from Respondents' acts, practices, or transactions, including a requirement to make restitution pursuant to A.R.S. §§ 44-2032, 44-3201, and 44-3292;

3.      Order Respondents to pay the state of Arizona administrative penalties of up to five thousand dollars ($5,000) for each violation of the Securities Act, pursuant to A.R.S. § 44-2036;

4.      Order Respondents AIO Financial and Holliday to pay the state of Arizona administrative penalties of up to one thousand dollars ($1,000) for each violation of the IM Act, pursuant to A.R.S. § 44-3296;

5.      Order Respondents AIO Financial and Holliday to pay the state of Arizona administrative penalties, pursuant to A.R.S. § 44-3201;

6.      Order the revocation or suspension of Respondent AIO Financial's license as an investment adviser and Respondent Holliday's license as an investment adviser representative pursuant to A.R.S. § 44-3201;

7.      Order that the marital communities of Respondents Carfagno, Holliday, and Respondent Spouses are subject to any order of restitution, rescission, administrative penalties, or other appropriate affirmative action pursuant to A.R.S. § 25-215; and

8.      Order any other relief that the Commission deems appropriate.

## XII.

## HEARING OPPORTUNITY

Each respondent including Respondent Spouses may request a hearing pursuant to A.R.S. §§ 44-1972 and 44-3212 and A.A.C. Rule 14-4-307. **If a Respondent or Respondent Spouse requests a hearing, the requesting respondent must also answer this Temporary Order and Notice.** A request for hearing must be in writing and received by the Commission within 20 days after service of this Temporary Order and Notice. The requesting respondent must deliver or mail the request for hearing to Docket Control, Arizona Corporation Commission, 1200 West Washington,

13

Docket No. S-20988A-16-0354

Phoenix, Arizona 85007. Filing instructions may be obtained from Docket Control by calling (602) 542-3477 or on the Commission's Internet web site at www.azcc.gov/divisions/hearings/docket.asp.

If a request for hearing is timely made, the Commission shall schedule a hearing to begin 10 to 30 days from the receipt of the request unless otherwise provided by law, stipulated by the parties, or ordered by the Commission. **Unless otherwise ordered by the Commission, this Temporary Order shall remain effective from the date a hearing is requested until a decision is entered.** After a hearing, the Commission may vacate, modify, or make permanent this Temporary Order, with written findings of fact and conclusions of law. A permanent Order may include ordering restitution, assessing administrative penalties, or other action.

If a request for hearing is not timely made, the Division will request that the Commission make permanent this Temporary Order, with written findings of fact and conclusions of law, which may include ordering restitution, assessing administrative penalties, or other relief.

Persons with a disability may request a reasonable accommodation such as a sign language interpreter, as well as request this document in an alternative format, by contacting Shaylin A. Bernal, ADA Coordinator, voice phone number (602) 542-3931, e-mail sabernal@azcc.gov. Requests should be made as early as possible to allow time to arrange the accommodation.

## XIII.

## ANSWER REQUIREMENT

Pursuant to A.A.C. R14-4-305, if a Respondent or Respondent Spouse requests a hearing, the requesting respondent must deliver or mail an Answer to this Temporary Order and Notice to Docket Control, Arizona Corporation Commission, 1200 W. Washington, Phoenix, Arizona 85007, within 30 calendar days after the date of service of this Temporary Order and Notice. Filing instructions may be obtained from Docket Control by calling (602) 542-3477 or on the Commission's Internet web site at www.azcc.gov/divisions/hearings/docket.asp.

Additionally, the answering respondent must serve the Answer upon the Division. Pursuant to A.A.C. R14-4-303, service upon the Division may be made by mailing or by hand-delivering a

14

Docket No. S-20988A-16-0354

copy of the Answer to the Division at 1300 West Washington, 3rd Floor, Phoenix, Arizona, 85007, addressed to Paul Kitchin.

The Answer shall contain an admission or denial of each allegation in this Temporary Order and Notice and the original signature of the answering respondent or the respondent's attorney. A statement of a lack of sufficient knowledge or information shall be considered a denial of an allegation. An allegation not denied shall be considered admitted.

When the answering respondent intends in good faith to deny only a part or a qualification of an allegation, the respondent shall specify that part or qualification of the allegation and shall admit the remainder. Respondent waives any affirmative defense not raised in the Answer.

The officer presiding over the hearing may grant relief from the requirement to file an Answer for good cause shown.

BY ORDER OF THE ARIZONA CORPORATION COMMISSION, this ___4___ day of _Octocber_ , 2016.

Matthew J. Neubert
Director of Securities

15