# EXHIBIT H

MARY ANN SMITH
Deputy Commissioner
DANIEL O'DONNELL
Assistant Chief Counsel
KENNY V. NGUYEN (State Bar No. 233385)
Senior Counsel
Department of Business Oversight
1515 K Street, Suite 200
Sacramento, California 95814
Telephone: (916) 322-8782
Facsimile: (916) 445-8730
Attorneys for Complainant

BEFORE THE DEPARTMENT OF BUSINESS OVERSIGHT

OF THE STATE OF CALIFORNIA

In the Matter of:

THE COMMISSIONER OF BUSINESS OVERSIGHT,

        Complainant,

    v.

JAMES JOHNSON AND ALL MARK INSURANCE SERVICES, INC.

        Respondents.

) CONSENT ORDER

This Consent Order is entered between the Department of Business Oversight (Department) through the Commissioner of Business Oversight (Commissioner), on the one hand, James Johnson and All Mark Insurance Services, Inc. (collectively, Respondents) on the other hand (hereafter, the Parties), and is made with respect to the following:

## RECITALS

A.    At all relevant times, James Johnson, a California resident, was sole owner and doing business as All Mark Insurance Services, Inc., with a business address of 25201 Paseo De Alicia #280, Laguna Hills, CA 92653.

-1-

CONSENT ORDER

B.    At all relevant times, Woodbridge Group of Companies, LLC was a company formed in California with a business address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423.

C.    Beginning as early as July 2012, Woodbridge Group of Companies, LLC and its affiliates, including but not limited to WMF Management, LLC, Woodbridge Structured Funding, LLC, Woodbridge Pre-Settlement Funding, LLC, Woodbridge Mortgage Investment Fund 1, LLC, Woodbridge Mortgage Investment Fund 2, LLC, Woodbridge Mortgage Investment Fund 3, LLC, Woodbridge Mortgage Investment Fund 3A, LLC, Woodbridge Mortgage Investment Fund 4, LLC, Woodbridge Commercial Bridge Loan Fund 1, LLC, Woodbridge Commercial Bridge Loan Fund 2, LLC (collectively, Woodbridge) offered securities in California to investors in the form of lending agreements, some of which were referred to as "First Position Commercial Mortgage Notes," "mezzanine loans," "construction loans," and "Co-Lending Opportunities" (collectively, FPCMs).

D.    FPCMs investors were solicited to invest anywhere between $25,000 to well over $250,000 to give to Woodbridge to pool with other investor monies. Woodbridge then lent the pooled monies to third-party borrowers for a short time at a high interest rate to finance the acquisition and/or development of real property in California, Colorado, and other states. FPCMs investors had no role in selecting or vetting the purported third-party borrower. FPCMs investors also had no decision-making role or management in negotiating the terms of the loans with the third-party borrower, nor did they have any decision-making role in the real estate acquisition or development.

E.    In exchange for lending money to Woodbridge, FPCMs investors were promised that they would "[e]arn a secured yield as high as 5%" in fixed monthly interest payments, for a term of nine, twelve, or eighteen months, with options to renew or "reposition" their lending toward a different real property at the end of the term. FPCMs investors were told that the loans they were making were secured by a "collateral assignment of note, mortgage, and other loan documents," which would be recorded with the real property that was the subject of the loan. FPCMs investors were told that the recorded documents would give them a "first position" lien interest in the subject real property, and that this would allow FPCMs investors to be paid back first in the event the

-2-

CONSENT ORDER

State of California - Department of Business Oversight

borrower defaulted on the loan. Woodbridge assured FPCMs investors that Woodbridge would pay them the interest payments regardless of whether the borrower defaulted on the loan. FPCMs investors were also assured they would get back their full principal at the end of the term if requested.

F.    Woodbridge used inhouse employees called "consultants" and paid external referrers, insurance salespersons, investment advisors, and financial planners to solicit and sell Woodbridge securities, including FPCMs, in California.

G.    Beginning in 2016, James Johnson and All Mark Insurance Services Inc., became agents of Woodbridge, in which capacity they offered and sold FPCMs issued by Woodbridge to California investors.

H.    James Johnson and All Mark Insurance Services, Inc., advised their clients in California to invest in FPCMs issued by Woodbridge.

I.    James Johnson and All Mark Insurance Services, Inc., received sales commission from Woodbridge of at least five percent for each dollar invested, totaling $102,618.03 in 2016 and $131,631.11 in 2017. Further, each time investors reinvested their initial investments – and some investors "repositioned" or renewed their investment more than once – James Johnson and All Mark Insurance Services, Inc, received yet another commission. Clients invested collectively over $3,776,910.00 in Woodbridge FPCMs through the efforts of James Johnson and All Mark Insurance Services, Inc.

J.    Neither James Johnson and All Mark Insurance Services, Inc., had secured from the Commissioner, nor any other similar licensing entity, a certificate authorizing them to sell or induce the sale of securities.

K.    Neither James Johnson and All Mark Insurance Services Inc., had secured from the Commissioner, nor from any other similar licensing entity, a certificate to offer investment advice for compensation.

L.    The Commissioner is of the opinion that the FPCMs issued and offered by Woodbridge, through James Johnson and All Mark Insurance Services Inc., are securities subject to qualification under the Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.) that have been offered or sold without first being qualified in violation of Corporations Code section 25110.

-3-

CONSENT ORDER

M.     Furthermore, the Commissioner is of the opinion that James Johnson and All Mark Insurance Services, Inc., effected, induced, or attempted to induce the purchase or sale of securities in the form of FPCMs in the State of California without first applying for and securing from the Commissioner a certificate authorizing them to act in that capacity, in violation of Corporations Code section 25210.

N.     Furthermore, the Commissioner is of the opinion that James Johnson and All Mark Insurance Services Inc., have conducted business as an investment adviser for compensation in this state without first securing from the Commissioner a certificate, then in effect, in violation of Corporations Code section 25230, subdivision (a).

O.     Respondents admit to the jurisdiction of the Commissioner with respect to the subject matter hereof and agree to the execution of this Consent Order as a resolution of the matter without the need to initiate litigation.

P.     The Commissioner finds this Consent Order is appropriate, in the public interest, for the protection of investors, and consistent with the purposes fairly intended by the policy and provisions of the Corporate Securities Law of 1968 (CSL).

NOW THEREFORE, in consideration of the foregoing, and the terms and conditions set forth herein, the Parties agree as follows:

## TERMS AND CONDITIONS

1.     Purpose. The purpose of this Consent Order is to resolve the foregoing issues in a manner that avoids the expense of a hearing and possible other court proceedings.

2.     Desist and Refrain Order. James Johnson and All Mark Insurance Services, Inc., are hereby ordered to desist and refrain from the further offer or sale of securities, in the State of California, including but not limited to lending agreements such as FPCMs, unless and until qualification has been made under said law or unless the security is exempt. James Johnson and All Mark Insurance Services, Inc., are further hereby ordered to desist and refrain from effecting, inducing or attempting to induce the purchase or sale of securities in this state as a broker-dealer without first applying for and securing from the Commissioner a certificate authorizing them to act in that capacity. James Johnson and All Mark Insurance Services, Inc., are further hereby ordered to

State of California - Department of Business Oversight

-4-

desist and refrain from acting as an investment adviser in the State of California unless and until they have first applied for and secured from the commissioner a certificate authorizing them to act as an investment adviser, or unless exempt.

3. <u>Waiver of Hearing Rights</u>. Respondents have read this Consent Order, are aware of their rights to a hearing and appeal in this matter if a formal enforcement action had been commenced to request the relief specified under this Consent Order, and elect to permanently waive any right to a hearing and appeal, including those rights under the CSL, the California Administrative Procedures Act (Gov. Code, § 11400 et seq.), and the Code of Civil Procedure with respect to the issuance of the Desist and Refrain Order specified in Paragraph 2.

4. <u>Future Actions by the Commissioner</u>. The Parties acknowledge and agree that nothing contained in this Consent Order shall operate to limit the Commissioner's ability to assist any other agency, (county, state or federal) with any prosecution, administrative, civil or criminal, brought by any such agency against Respondents based upon the subject matter hereof or otherwise. This Consent Order shall not limit the ability of the Commissioner to bring any administrative or civil action to enforce compliance with this Consent Order or to seek penalties for its violation. Further, the Commissioner reserves the right to bring any future action(s) against Respondents or any of the managers, officers, directors, shareholders or employees of Respondents for all unknown or future violations of the CSL.

5. <u>Independent Legal Advice</u>. Respondents represent, warrant, and agree that they have had the opportunity to seek independent advice from legal counsel and/or representative with respect to the advisability of executing this Consent Order.

6. <u>No Other Representation</u>. Each of the Parties represents, warrants, and agrees that in executing this Consent Order each has relied solely on the statements set forth herein and the advice of its own counsel and/or representative. Each of the Parties further represents, warrants, and agrees that in executing this Consent Order it has placed no reliance on any statement, representation, or promise of any other party, or any other person or entity not expressly set forth herein, or upon the failure of any party or any other person or entity to make any statement, representation or disclosure of anything whatsoever. The Parties have included this clause: (1) to preclude any claim that any

CONSENT ORDER

State of California - Department of Business Oversight

party was in any way fraudulently induced to execute this Consent Order; and (2) to preclude the introduction of parol evidence to vary, interpret, supplement, or contradict the terms of this Consent Order.

7.     Modifications and Qualified Integration. No amendment, change, or modification to this Consent Order shall be valid or binding to any extent unless it is in writing and signed by all the parties affected by it.

8.     Full Integration. This Consent Order is the final written expression and the complete and exclusive statement of all the agreements, conditions, promises, representations, and covenants between the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings, and discussions between and among the parties, their respective representatives, and any other person or entity, with respect to the subject matter covered hereby.

9.     No Presumption from Drafting. In that the Parties have had the opportunity to draft, review and edit the language of this Consent Order, no presumption for or against any party arising out of drafting all or any part of this Consent Order will be applied in any action relating to, connected, to, or involving this Consent Order. Accordingly, the Parties waive the benefit of Civil Code section 1654 and any successor or amended statute, providing that in cases of uncertainty, language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

10.     Limited Nature of Consent Order. Respondents neither admit nor deny the allegations and violations set forth in paragraphs B through N, above, in this Consent Order. As part of this Consent Order the Respondents agree that they: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Consent Order or creating the impression that the Consent Order is without factual basis; and (ii) will not make or permit to be made any public statement to the effect that Respondents do not admit the allegations of the Consent Order, or that this Consent Order contains no admission of the allegations, without also stating that Respondents do not deny the allegations. If Respondents breach this agreement, the Department may vacate this Consent Order and restore this action. Nothing in this paragraph affects

-6-

CONSENT ORDER

the Respondents': (i) testimonial obligations; or (ii) right to take differing legal or factual positions in litigation or other legal proceedings.

11.   <u>Effect Upon Future Proceedings</u>. If Respondents apply for any license, permit or qualification under the Commissioner's current or future jurisdiction, or are the subject of any future action by the Commissioner to enforce this Consent Order, then the subject matter hereof shall be admitted for the purpose of such application(s) or enforcement proceedings(s).

12.   <u>Counterparts</u>. This Consent Order may be executed in one or more counterparts, each of which shall be an original but all of which, together, shall be deemed to constitute a single document.

13.   <u>Terms, Headings and Governing Law</u>. All terms used, but not defined herein, shall have the meaning assigned to them by the CSL. The headings to the paragraphs of this Consent Order are inserted for convenience only and will not be deemed a part hereof or affect the construction or interpretation of the provisions hereof. This Consent Order shall be construed and enforced in accordance with, and governed by, the laws of the State of California.

14.   <u>Authority for Settlement</u>. Each party warrants and represents that such party is fully entitled and duly authorized to enter and deliver this Consent Order. In particular, and without limiting the generality of the foregoing, each party warrants and represents that it is fully entitled to enter the covenants, and undertake the obligations set forth herein.

15.   <u>Public Record</u>. Respondents acknowledge that this Consent Order is a public record. Respondents further understand and agree to not make any statement or representation that is inconsistent with the Consent Order.

16.   <u>Voluntary Agreement</u>. The Parties each represent and acknowledge that in executing this Consent Order, each does so completely voluntarily and without any duress or undue influence of any kind from any source.

///

///

///

///

_State of California - Department of Business Oversight_

-7-

CONSENT ORDER

17.    Effective Date:  This Consent Order shall become effective when executed by the Commissioner or her designee and transmitted by electronic mail (email) to Respondents' counsel, Benjamin Biard at biard.b@wssllp.com.

Dated: _____11/26/18_____

JAN LYNN OWEN
Commissioner of Business Oversight

By:    _____
MARY ANN SMITH
Deputy Commissioner
Enforcement Division

ALL MARK INSURANCE SERVICES, INC.

Dated: _____11/15/18_____

_____
JAMES JOHNSON
Owner and Principal

Dated: _____11/15/18_____

_____
JAMES JOHNSON
In his individual capacity

Approved as to Form:

_____
Benjamin Biard, Esq.
Winget, Spadafora & Schwartzberg, LLP
*Counsel for Respondents*

-8-

CONSENT ORDER