# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>　　　　　　　　　　Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (JKS)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>JAMES E. CAMPBELL, JR., INC., d/b/a CAMPBELL FINANCIAL CORP., and JAMES E. CAMPBELL, JR.,<br><br>　　　　　　　　　　Defendants. | Adversary Proceeding<br>No. 19-50965 (JKS) |

## PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL  SUMMARY JUDGMENT

Jason S. Pomerantz (admitted *pro hac vice*)
Jeffrey P. Nolan (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100

*Counsel for Plaintiff*

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows:  Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172).  The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.a

4928-1281-0760.6 94811.003

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    A. THE SUMMARY JUDGMENT MOTION CARRIED ITS BURDEN TO ESTABLISH THE COMMISSIONS PAID WERE FRAUDULENT CONVEYANCES AND DEFENDANTS INVOLVEMENT AS BROKERS SELLING WOODBRIDGE INVESTMENTS TO THE PUBLIC. ............................ 2

    B. THE OPPOSITION RAISES NO TRIABLE ISSUE OF FACT AS A DEFENSE TO A FRAUDULENT CONVEYANCE CLAIM UNDER SECTION 548(C) OF THE BANKRUPTCY CODE OR CALIFORNIA CIVIL CODE §3439.08(A). .................. 4

    C. THE PLEADINGS, OPPOSITION AND THE CEASE AND DESIST ORDER ATTACHED TO THE MOTION MAKE CLEAR THAT BOTH DEFENDANTS JAMES CAMPBELL, JR. AND JAMES CAMPBELL JR., INC. PARTICIPATED AND BENEFITED FROM THE RECEIPT OF THE COMMISSION CHECKS ....... 5

        (i) Mr. Campbell Negotiated Commission Checks That Were Made Payable to Him, Individually, In the Amount of $38,860 ................................................... 6

        (ii) 125 Checks In The Total Amount Of $197,294, Were Written And Made Payable To Campbell Financial Corp. A Trade Name Controlled By Mr. Campbell ................................................................................................................ 8

    D. MR. CAMPBELL PARTICIPATED IN IN THE SALE THE OF THE FRAUDULENT CONVEYANCES AND IS LIABLE FOR HIS ACTIVE INVOLVEMENT ................................................................................................. 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Bonded Financial Services, Inc. v. European American Bank*,
  838 F.2d 890 (7th Cir. 1988) ................................................................................................ 7

*Brun v. Madray (In re Brun)*,
  360 B.R. 669  (Bankr. C.D. Cal. 2007) .................................................................................. 6

*Gottex Fund Mgmt. v. MKA Real Estate Opportunity Fund I, LLC.*,
  2013 U.S. Dist. LEXIS 198339 (C.D. Cal. 2013) .................................................................. 9

*In re AgriProcessors, Inc.*,
  859 F.3d 599 (8th Cir. 2017) ................................................................................................. 7

*In re Bayou Grp., LLC*,
  362 B.R. 624 (Bankr. S.D.N.Y. 2007) .................................................................................... 5

*In re Incomnet, Inc.*,
  463 F.3d 1064 (9th Cir. 2006) ............................................................................................... 7

*In re Mervyn's Holdings, LLC*,
  426 B.R. 96 (Bankr. D. Del. 2010) ........................................................................................ 7

*In re Reeves*,
  65 F.3d 670 (8th Cir. 1995) ................................................................................................... 7

*Jurista v. Amerinox Processing, Inc.*,
   492 B.R. 707 (D.N.J. 2013) .................................................................................................. 6

*Keller v. United States*,
  58 F.3d 1194 (7th Cir. 1995) ................................................................................................. 3

*Parilla v. IAP Worldwide Servs. VI, Inc.*,
  368 F.3d 269 (3rd Cir. 2004) ................................................................................................. 3

*RBC Cap. Mkts., LLC v. Jervis*,
  129 A.3d 816 (Del. 2015). ..................................................................................................... 9

*Warfield v. Byron*,
  436 F.3d 551 (5th Cir. 2006) ................................................................................................. 5

**Statutes**

11 U.S.C. § 544 ............................................................................................................................ 4, 6

11 U.S.C. § 544(b) ........................................................................................................................... 6

11 U.S.C. § 548(c) ....................................................................................................................... 4, 5

11 U.S.C. § 550(a) ........................................................................................................................... 6

11 U.S.C. § 550(a)(1) ....................................................................................................................... 7

11 U.S.C. §550(a), (1), (2) ............................................................................................................... 6

Cal. Civ. Code § 3439.08(a) ............................................................................................................ 4

**Other Authorities**

H.R. Rep. No. 595, 95th Cong. 1st Sess. 375 (1977) ................................................................... 6

11 U.S.C.A. § 550 ......................................................................................................................... 6

11 U.S.C.A. § 550(a) .................................................................................................................... 7

**PRELIMINARY STATEMENT**

1.      The undisputed facts are that Defendants, brokers, solicited the public to invest in Woodbridge Notes and Units[1] without any care for the legitimacy of the product they were selling.  The investments were unlicensed, unregistered securities, expressly forbidden from being sold by numerous state regulatory agencies.  For inviting new investors to participate in the Ponzi scheme, Defendants were rewarded with commission checks of $254,861.97.

2.      The Opposition does not dispute the existence of the Ponzi scheme, or Defendants participation in it selling Woodbridge Notes and Units to the public. Many of Defendants' former clients contributed their claims to the Liquidating Trust in an effort to be reimbursed for the massive losses they sustained, which losses were in excess of $2,000,000.[2] The Trustee carried his burden on Motion For Partial Summary Judgment (the "Motion") to establish the existence of the Ponzi scheme, <u>the Defendants undisputed participation in it selling the fraudulent investments</u>, and the established case law that commission payments made to further a Ponzi scheme are Intentionally and Constructively Fraudulent Conveyances under Federal and State law.  The Opposition raises no affirmative defense to a fraudulent conveyance claim. No material issue of fact remains for trial on the issue of liability and summary judgment is properly granted.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in Plaintiff's Motion for Partial Summary Judgment (the "Motion")

[2] See Decl. Of Troszak, Dkt No. 74, Exhibit 4, second attachment identified as Exhibit B, "Schedule of Claims Contributed by Investors" of the Defendants James Campbell, Jr. and James Campbell Jr., Inc.

3. The Opposition contends that genuine issues of material fact remain "as to which defendants received what transfers, when, and in what amounts". (Opposition, Dkt No. 77, pg. 2). According to Defendant James Campbell, Jr. ("Mr. Campbell") all funds alleged in the Complaint were received but "would be attributable to the corporate defendant", not Mr. Campbell, personally. (Opposition pg. 5, SOF, #5). In this manner, Mr. Campbell, seeks to park the liabilities in his solely owned, controlled and non-operating corporate entity. However, all the commission checks were made payable to Mr. Campbell individually, or to his solely controlled unincorporated trade name, Campbell Financial Corp. He exercised dominion and control over the checks and where he chooses to deposit checks made payable to himself, is not a defense. Further, under Federal and State law, the initial transferee and "the entity for whose benefit such transfer was made", is liable.

4. Mr. Campbell was the architect of the fraudulent conveyances as he admitted to Colorado State regulators. The corporate entity was not a party to these admissions. The Motion carries its burden that both Defendants exercised dominion and control over the commission checks and are liable.

### ARGUMENT

**A.    THE SUMMARY JUDGMENT MOTION CARRIED ITS BURDEN TO ESTABLISH THE COMMISSIONS PAID WERE FRAUDULENT CONVEYANCES AND DEFENDANTS INVOLVEMENT AS BROKERS SELLING WOODBRIDGE INVESTMENTS TO THE PUBLIC.**

5. The Motion set forth undisputed facts as to the establishment of the Ponzi scheme, the Ponzi scheme findings by the Bankruptcy Court and the District Court, the Defendants' role and compensation from the Ponzi scheme, and the Debtor and Defendants

Securities Law Violations in selling the securities. (Motion, Dkt No. 72, ¶¶17-34). The Opposition does not dispute the existence or the findings of a Ponzi scheme or the Defendants' receipt of commission checks as participants. Rather, the Opposition claims the Motion needed to "differentiate" between the defendant entities. Since both Defendants unabashedly expressed their involvement in selling the Woodbridge investments and their allegiance to Shapiro and his endeavors, the claim is merely the argument of counsel seeking to rewrite the facts and prolong the litigation.

      6.      On January 10, 2020, Defendants, and each of them, filed a lengthy Response to the Complaint, in which they admitted selling Woodbridge commercial mortgages, taking advantage of "a loophole in the securities laws that left their product free from regulation", and wherein Mr. Campbell, "personally warn[ed] every client before doing business with me that it was possible the Division of Securities in Colorado could eventually decide the product must be regulated…". (See Defendant Response: (1) Regarding Avoidance and Recovery of Avoidable Transfers; and (2) Regarding Accusation of Sale of Unregistered Securities, Fraud and Aiding and Abetting Fraud; Dkt No. 4; hereinafter "the Answer"). The Answer denied knowledge of the Ponzi scheme, but confirmed selling the investments as part of a "valid business model that was upset by unreasonable government interference'. (Answer, Id., ¶15). Defendants sold "short term loans/mortgages" and were paid commissions "as part of a time-honored practice". (Answer, Id., pg. 12, Summary, ¶1). It is a well-settled rule that a party is bound by what it states in its pleadings. *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 275 (3rd Cir. 2004); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)

("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."). No issue of fact remains for trial as to each Defendants active participation in the Ponzi scheme.

   7. Once it is determined that a Ponzi scheme exists, all transfers made in furtherance of that Ponzi scheme are presumed to have been made with fraudulent intent. (Motion, ¶47). Defendant does not dispute the law set forth in the Motion that commissions earned by brokers to "reward" them for bringing in new investors to a Ponzi scheme are "clearly tainted" funds. (Motion, ¶48). Commissions earned for promoting a Ponzi scheme are fraudulent transfers under §§ 548 and 544 of the Bankruptcy Code. (Motion, ¶48). The Motion met its burden under the Bankruptcy Code to establish the commission payments made to Defendants were fraudulent transfers.

**B.** **THE OPPOSITION RAISES NO TRIABLE ISSUE OF FACT AS A DEFENSE TO A FRAUDULENT CONVEYANCE CLAIM UNDER SECTION 548(C) OF THE BANKRUPTCY CODE OR CALIFORNIA CIVIL CODE §3439.08(A).**

   8. As set forth in the Motion, Section 548(c) of the Bankruptcy Code creates a defense to a fraudulent transfer who takes the property in (1) good faith and (2) for value. See 11 U.S.C. § 548(c) ("[A] transferee . . . of such a transfer . . . that takes for value and in good faith has a lien on or may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ."). The CUVTA includes an analogous defense. See Cal. Civ. Code § 3439.08(a) (providing a defense to transferees who took in good faith and for reasonably equivalent value). (Motion, ¶61). ("Because Bankruptcy Code § 548(c) is an affirmative defense, the transferee bears the burden of establishing all

elements of the . . . defense."); *In re Bayou Grp., LLC*, 362 B.R. 624, 631 (Bankr. S.D.N.Y. 2007) ("The good faith/value defense provided in Section 548(c) is an affirmative defense, and the burden is on the defendant-transferee to plead and establish facts to prove the defense."). (Motion, ¶62). The good faith/value defense under 11 U.S.C. 548(c) is a conjunctive test, meaning the Defendant must prove the defendant gave "for value" and "in good faith". *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006) (holding that because the broker defendant could not have provided value, "we need not draw a conclusion on good faith"). (Motion, ¶64).

    9. The Opposition submits no evidence that the Defendants provided value to the Debtor and does not dispute the case law that brokers selling fraudulent investments do not provide "value", but simply perpetuate the scheme wherein the Debtor incurs greater liabilities. The Debtor paid commission checks to the Defendants in the amount of $254,861.97, and the Debtor received nothing in return. Without providing value to the Debtor's estate, Defendants cannot meet their burden to establish a valid defense.

**C.** **THE PLEADINGS, OPPOSITION AND THE CEASE AND DESIST ORDER ATTACHED TO THE MOTION MAKE CLEAR THAT BOTH DEFENDANTS JAMES CAMPBELL, JR. AND JAMES CAMPBELL JR., INC. PARTICIPATED AND BENEFITED FROM THE RECEIPT OF THE COMMISSION CHECKS**

    10. The Opposition contends that Plaintiff's statement of material facts, ¶¶27 through 33, lump the Defendants together, are unsupported, and are conclusory allegations. (Opposition, pg. 5, Section III) According to the Opposition, all funds received are attributable to the corporation, James Campbell Jr., Inc., such that Mr. Campbell has no liability relating to the Transfers. However, only one check was made payable to the corporate defendant, James Campbell, Jr., Inc. Rather, the checks were either made payable to Mr. Campbell, or his

5

fictitious trade name, Campbell Financial Corp. (Second Decl. of Troszak, ⁋5, 6, 7). The assertion that Mr. Campbell, alone, can dictate liability based on his personal preference as to where he deposits a check, which only he could cash, is without citation to legal authority and untenable. (Opposition, pg. 7, Section V). The contention is erroneous for a multitude of reasons.

          (i) <u>Mr. Campbell Negotiated Commission Checks That Were Made Payable to Him, Individually, In the Amount of $38,860</u>

11.    The Bankruptcy Code "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R. Rep. No. 595, 95th Cong. 1st Sess. 375 (1977). *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800 (9th Cir. 1994). After demonstrating the right to recover conveyances under section 544(b), a trustee must then establish the amount of recovery under section 550(a) of the Bankruptcy Code, which provides that, "to the extent that a transfer is avoided under section 544 . . ., the trustee may recover, for the benefit of the estate, the property transferred." 11 U.S.C. § 550(a)  Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred. *See Brun v. Madray (In re Brun)*, 360 B.R. 669, 675 (Bankr. C.D. Cal. 2007).

12.    Pursuant to 11 U.S.C. 550(a), to the extent the transfer is avoided, the trustee may recover from the initial transferee or any immediate or mediate transferee of such initial transferee. 11 U.S.C. §550(a), (1), (2). Under this section of the Bankruptcy Code, the trustee can recover from both the initial transferee and any secondary transferee, as well as from any entity for whose benefit the initial transfer was made. 11 U.S.C.A. § 550. *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707 (D.N.J. 2013). To qualify as "transferee," and be liable

on an avoided transfer, the party receiving the transferred money or other asset must have dominion over this money or other asset and the right to put it to his or her own purposes; in other words, the transferee must have legal right to use funds to whatever purpose he or she wishes, be it to invest in lottery tickets or uranium stocks. 11 U.S.C.A. § 550(a). *In re Mervyn's Holdings, LLC*, 426 B.R. 96 (Bankr. D. Del. 2010).  To be an initial transferee under Section 550(a)(1), a party must be the first person to have "dominion and control over the transferred funds." *In re Reeves*, 65 F.3d 670, 676 (8th Cir. 1995). To have "dominion" over funds is to have "legal title to them and the ability to use them as [the party] sees fit." *In re AgriProcessors, Inc.*, 859 F.3d 599, 605 (8th Cir. 2017).  Similarly, the Ninth Circuit has focused on whether a party "truly had control of the money", meaning as a practical matter, such party had discretion or authority over to direct their disbursement. *In re Incomnet, Inc.*, 463 F.3d 1064, 1070-71 (9th Cir. 2006).  As set forth in the Answer, James Campbell, Jr. admitted he "gladly took the commissions but do [sic] not remember what gift-client it was from". (Answer, Adv. D.I. 4, ¶2). The check copies wherein the payee on the checks is Mr. Campbell, evidences he alone was free to cash the checks outright, or to negotiate the checks into any account he saw fit to place them.  Defendants do not contend that Mr. Campbell was a "mere conduit" nor would it matter if they did.  The mere conduit defense is reserved for financial intermediaries such as banks, real estate escrows, title companies, and securities and investment brokers who may have possession of transferred funds in their capacity as a depository.  *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 891 (7th Cir. 1988). Mr. Campbell was the intended party to the transfer.

7

13. It is an uncontroverted fact that twenty-two checks were made payable to "James Campbell, Jr.", an individual, and negotiated by him. (Second Dec. of Troszak, ¶5). No issue remains for trial as to both defendants receipt and control of the commission checks in the amount of $38,860.

> (ii) <u>125 Checks In The Total Amount Of $197,294, Were Written And Made Payable To Campbell Financial Corp., A Trade Name Controlled by Mr. Campbell</u>

14. Mr. Campbell claims each payment was "attributable" to the corporation. (Opposition, Dkt No. 77-1, ¶5). The undisputed facts are that one single check, in the amount of $112, was made payable to the corporate Defendant. (Second Decl. of Troszak, ¶6). The remainder of the checks were written to "Campbell Financial Corp." an entity without corporate form and a d/b/a. Mr. Campbell was the registered agent for Campbell Financial Corp. (RJN, Dkt No. 75-12, ¶6).

15. The claim the commission checks were "attributable" to the corporation is also <u>directly</u> contradicted by the various stipulations and consent decrees executed between the State of Colorado and Mr. Campbell. Specifically, with respect to the Woodbridge Notes, Mr. Campbell consented to the allegations that he personally did not register to sell securities with State of Colorado, he did not register the Woodbridge Notes which were securities, and he personally and willfully, violated the Colorado Securities Act. (See Consent Cease and Desist Order, attached to Decl. of Nolan, Exhibit A, ¶I, Background). The State of Colorado, Securities Division, conducted an investigation and held at all relevant times Mr. Campbell was the actor and responsible party:

"Campbell acted as an independent Woodbridge sales agent through Campbell Financial, where he still serves as President and Control Person". (RJN, Dkt No. 75-12, ¶6).

16. Mr. Campbell was the control person at Campbell Financial Corp. a fictitious entity and checks made payable to Campbell Financial Corp. were under his dominion and control. The Opposition seeks to re-write the fact pattern. The material facts demonstrate Mr. Campbell and Campbell Financial Corp. were active participants even though checks were deposited in a corporate account thereafter.

**D.   MR. CAMPBELL PARTICIPATED IN IN THE SALE THE OF THE FRAUDULENT CONVEYANCES AND IS LIABLE FOR HIS ACTIVE INVOLVEMENT**

17. Under Delaware law, a third party may be liable for aiding and abetting a breach of fiduciary duty if there is "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and (iv) damages proximately caused by the breach." *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015). California law is consistent with Delaware law. *Gottex Fund Mgmt. v. MKA Real Estate Opportunity Fund I, LLC.*, 2013 U.S. Dist. LEXIS 198339, *12 (C.D. Cal. 2013)

18. The Complaint alleged causes of action for Fraud and Aiding and Abetting a Fraud. (Motion, ¶2; Adv. D.I. 1, 8th & 9th causes of action) Though not subject to the partial motion for summary judgment, the Answer filed by Defendants admits Defendants acted as a fiduciary, in concert with Shapiro, and Defendants were selling unregistered securities through a perceived "loop-hole". (Answer, Dkt. No. 4, ¶15). The State of Colorado Complaint and Consent Decrees which were specific to the sale of Woodbridge Notes and evidence Mr. Campbell, willfully assisting the Ponzi scheme. If the Trustee is unsuccessful on summary judgment, Mr.

Campbell's own statements and disregard as to the actions he took will support the allegations of fraud and/or aiding and abetting Fraud (Complaint, Adv. D.I. 1, Eighth and Ninth causes of action).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion in its entirety as to each Defendant in substantially the form attached hereto and grant such other and further relief as the Court deems just and proper.

Dated:  January 3, 2024                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Colin R. Robinson*
Jason S. Pomerantz (CA Bar No. 157216) (pro hac vice)
Jeffrey Nolan (CA Bar No. 158923) (pro hac vice)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: jspomerantz@pszjlaw.com
            jnolan@pszjlaw.com
            crobinson@pszjlaw.com

*Counsel for Plaintiff*